ams

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ERIC R. YOST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-4122-JAR |
| ) | |
| MIKEL L. STOUT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

The Court now considers defendants' Motion to Dismiss Complaint (Doc. 14) and Motion to Certify a Question of State Law to the Kansas Supreme Court (Doc. 16). The motions are fully briefed and the Court is prepared to rule. As explained more fully below, the Court denies both of defendants' motions.

**I. Background**

This case involves a constitutional challenge by plaintiff Eric R. Yost, a district court judge in Sedgwick County and candidate for re-election in 2008, to certain canons of the Kansas Judicial Code of Conduct.[1] The named defendants are members of the Kansas Commission on Judicial Qualifications ("the Commission"), along with the Commission Examiner, Edward G. Collister, Jr.

First, plaintiff challenges Canon 5A(1)(b) ("the endorsement clause") on its face and as

---

[1] An extensive background of judicial ethics rules in Kansas is set forth by this Court in *Kansas Judicial Watch v. Stout*, 440 F. Supp. 2d 1209 (D. Kan. 2006).

applied to plaintiff. The endorsement clause states that, with certain exceptions, "a judge or a candidate for election or appointment to judicial office shall not: . . . (b) publicly endorse or publicly oppose another candidate for public office."[2]  Second, plaintiff challenges Canon 5A(1)(e) and Canon 5C(2) ("the solicitation clauses"), on their face and as applied to plaintiff. Under 5A(1)(e), a judge or candidate shall not "solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions." Canon 5C(2) provides:

> A candidate shall not personally solicit or accept campaign contributions or solicit publicly stated support nor shall a candidate serve as his or her own campaign treasurer. A candidate subject to public election may, however, establish committees of responsible persons to solicit and accept reasonable campaign contributions, to manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees may solicit and accept reasonable campaign contributions and public support from lawyers. A candidate's committees may solicit contributions and public support . . . no earlier than one year before an election and no later than 90 days after the last elections in which the candidate participates during the election year.[3]

The Verified Complaint alleges plaintiff wishes to publicly endorse and publicly oppose certain political candidates for public office who are not candidates running for judicial office. Also, plaintiff would like to personally solicit funds from non-attorneys who wish to support him by going door-to-door, making personal phone calls, and signing letters asking for financial support. Plaintiff does not seek to solicit funds in his official capacity as a judge.

---

[2] Kan. S. Ct. R. 601A, Canon 5A(1)(b). One of these exceptions is that a judge or candidate may publicly endorse or publicly oppose other candidates for the same judicial office in a public election in which the judge or judicial candidate is running. *See* Canon 5C(1)(b)(iv).

[3] Kan. S. Ct. R. 601A, Canon 5C(2); (Ex. 7). The asterisks indicates terms that are defined separately in the Code of Judicial Conduct.

## II. Motion to Dismiss

Defendants urge dismissal under Fed. R. Civ. P. 12(b)(6), arguing that plaintiff lacks standing, that the case is not ripe for review and that this Court should abstain. The Court accepts as true all material factual allegations in the Verified Complaint and construes the Verified Complaint in favor of plaintiff.[4]

### A. Standing

Defendants argue that plaintiff lacks standing on constitutional grounds. Article III, section 2 of the U.S. Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."[5] In order to satisfy the constitutional standing requirements, plaintiff must prove: (1) injury in fact; (2) a causal connection between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision.[6] These are not mere pleading requirements, but are an indispensable part of plaintiffs' case.[7] On a motion to dismiss, the Court "'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'"[8]

Defendants argue that plaintiff is unable to allege sufficient facts that he suffered an injury in fact. In order to have suffered an injury in fact, plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

---

[4] *See, e.g.*, *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)), *cert. denied*, 127 S. Ct. 1254 (2007).

[5] *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[6] *Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 180–81 (2000); *see also Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[7] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[8] *Id.* (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)).

3

conjectural or hypothetical."[9]  As the Tenth Circuit recently explained:

> In freedom of expression cases, injury in fact can be shown by alleging (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute," and (2) "a credible threat of future prosecution." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir.2003). "Allegations of possible future injury do not satisfy the injury in fact requirement, though a plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Initiative & Referendum Inst. v. Walker*, 450 F.3d at 1087-88 (internal quotations omitted). But the "mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Winsness*, 433 F.3d at 732.
>
> To satisfy the injury in fact requirement, the plaintiff must demonstrate that expressive activities will be inhibited by "an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." *Id.* While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), they do not confer standing to pursue prospective relief without some credible threat of future injury. *See Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "[A]ssurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past." *Winsness*, 433 F.3d at 731 (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004)).[10]

The Verified Complaint establishes that plaintiff intends to engage in protected speech that is proscribed by the three judicial canons at issue in this case.  The canons apply to plaintiff in both his capacity as a judge and as a 2008 judicial candidate.  He seeks to endorse candidates

---

[9]*Id.* at 560 (citations and quotations omitted) (footnote omitted).

[10]*Mink*, 482 F.3d at 1253.

4

for public office other than his own, and to personally solicit funds for his re-election committee. Under the standard to be applied on a motion to dismiss, the Court accepts these verified allegations as true. While the Court can not be 100% certain that plaintiff will in fact engage in this conduct if the judicial canons were declared unconstitutional, such a degree of certainty is not required.[11]

Defendants argue that because plaintiff has not been subjected to discipline for violating the judicial canons at issue, he has not established a "credible threat" of "real consequence" stemming from their enforcement. Defendants further argue that because the Commission has never prosecuted candidates for violations of the endorsement and solicitation clauses, there is no credible threat of prosecution. Plaintiff does not allege that he has ever been threatened with discipline for engaging in these types of endorsements or solicitation in the past. However, defendants do not disavow any intention of bringing charges against plaintiff for violations of the judicial canons if he does pursue his intended course of action in endorsing candidates for public office and soliciting campaign support and contributions. Nor do they indicate that the challenged canons would not apply if plaintiff engages in future political activity as set forth in the Verified Complaint.[12]

The Court does find a credible threat of prosecution, for purposes of the standing analysis, based on the plain language of the canons. Certainly the activities sought by plaintiff—personal solicitation of money and support as well as public endorsement or

---

[11]*Roe No. 2 v. Ogden*, 253 F.3d 1225, 1229 (10th. Cir. 2001).

[12]*See Ward v. Utah*, 321 F.3d 1263, 1268 (10th Cir. 2003) (explaining that an explicit declaration that the challenged law would not apply to the plaintiff's behavior is not required to defeat standing; such a conclusion was "critical" to the Tenth Circuit's conclusions in other cases that plaintiffs did not have standing).

5

opposition to other candidates for public office other than his own—are proscribed by the challenged canons and defendants have set forth no evidence to suggest that they would not discipline plaintiff if he were to engage in this activity.[13]  As such, plaintiff is able to establish that he faces a credible threat of real consequence if he engages in the activity described in the Verified Complaint.[14]

Although not challenged by defendants, the Court further finds that the application of the challenged canons are the cause of the injury outlined above and that the injury would be redressed if the Court were to deem the canons unconstitutional.

### B.  Ripeness

Like standing, ripeness is a justiciability doctrine "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[15]  Ripeness generally requires the court to evaluate the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration.[16]  In

---

[13]Plaintiff points to a 1998 Judicial Ethics Advisory Panel ("the Panel") decision, JE 82, which advises that a judge's campaign committee is a "political organization," as used in Canon 5C(1)(a).  The 1997 version of that clause stated: "A . . . judge subject to public election may . . . at any time . . . attend political gatherings . . . and . . . contribute to a political organization."  The opinion was in response to the following question posed by a district judge to the Panel: May [a] judge contribute money to [a] fellow judge's campaign committee?"  The Panel advised that a judge may contribute money to a fellow judge's campaign committee.  Plaintiff fails to explain how this advisory opinion furthers his contention that there is a credible threat of real consequences to him if he engaged in the proposed conduct.  For purposes of the canons at issue here, the opinion merely defines "political organization" to include a judge's campaign committee.  Irrespective of this Panel opinion, the Court finds a credible threat of real consequence to plaintiff if he engages in the specific conduct cited in the Verified Complaint based on the plain language of the canons.

[14]*See Meese v. Keene*, 481 U.S. 465, 473–74 (1987) (finding injury because plaintiff would have been subject to adverse consequences of the loss of personal and professional reputation if he engaged in sought after expression).

[15]*Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003).

[16]*Id.* at 808.

6

contrast to the standing analysis, the ripeness doctrine "focuses not on whether the plaintiff was in fact harmed but rather 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'"[17] The issue is related to standing because "if a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will be satisfied."[18] For substantially the same reasons discussed under the standing analysis, the Court finds that this case is ripe for review.

The customary ripeness analysis is somewhat relaxed when there is a facial challenge under the First Amendment.[19] In such a situation, "reasonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim."[20] The Tenth Circuit has explained that the ripeness framework is relaxed in the First Amendment context because of the chilling effect that burdens on constitutionally protected speech could cause.[21] Because this case includes facial challenges based on the First Amendment, the Court employs the following flexible inquiry in the context of a facial challenge to the judicial canons: (1) hardship to the parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review.[22]

---

[17]*Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)).

[18]*ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999) (quoting *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1428 (D.C. Cir. 1996)).

[19]*Johnson*, 194 F.3d at 1155.

[20]*Id.* (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (internal quotation omitted)).

[21]*Gonzales*, 64 F.3d at 1500.

[22]*Id.* (citing *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990)).

The Court has already determined that plaintiff has alleged sufficient facts to meet these requirements. The hardship element is met because the challenged canons create "a direct and immediate dilemma for the parties."[23] This is so because plaintiff is placed in the dilemma of subjecting himself to disciplinary action if he exercises political expression under the challenged canons. The Court has also already found that the challenged canons create a chilling effect on plaintiff's First Amendment liberties. Finally, the fitness for judicial review element is met because plaintiff's intended future conduct is not so uncertain.[24] Plaintiff has asserted in his Verified Complaint that he desires to engage in the endorsement of or opposition to other candidates for public office and that he would like to solicit contributions for his reelection campaign in 2008. As such, the Court finds this case ripe for review.

### C. Abstention

Defendants argue that this Court should abstain because the case presents a federal constitutional issue that could be mooted or presented in a different posture by a determination of state law under *R.R. Commission v. Pullman Co.*[25] The Court should abstain under *Pullman* when three conditions are met: (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies.[26]

---

[23]*See Morgan v. McCotter*, 365 F.3d 882, 891 (10th Cir. 2004).

[24]*Id.* (quoting *Gonzales*, 64 F.3d at 890).

[25]312 U.S. 496, 501 (1941).

[26]*Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992) (citing *Vinyard v. King* , 655 F.2d 1016, 1018 (10th Cir. 1981)).

"Abstention is a narrow exception to the duty of a district court to adjudicate a controversy properly before it, and is used only in exceptional circumstances."[27]

Although a state court adjudication of the canons at issue might present the constitutional questions in a different posture, the Court rejects defendants' request for abstention. Although the case involves state judicial canons, the outcome of this litigation turns on an interpretation of federal constitutional law. Because plaintiff is exercising his right to bring a claim under 42 U.S.C. section 1983, as a federal constitutional challenge, and because the delay from abstaining could perpetuate the alleged chilling effect on his First Amendment rights, the Court does not find *Pullman* abstention appropriate in this case.[28]

### III. Motion to Certify

Defendants move this Court to certify the following question of state law to the Kansas Supreme Court pursuant to the Uniform Certification of Questions of Law Act, K.S.A. § 60-3201: "whether Kansas Code of Judicial Conduct, Canons 5A(1)(b) and (e) and Canon 5C(2) are constitutional on their face and as applied?" Pursuant to K.S.A. § 60-3201, the Kansas Supreme Court may answer questions of law certified to it, when requested by the certifying court:

> [I]f there are involved in any proceeding before it questions of law
> of this state which may be determinative of the cause then pending
> in the certifying court and as to which it appears to the certifying
> court there is no controlling precedent in the decisions of the
> supreme court and the court of appeals of this state.

---

[27] *S&S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 442 (10th Cir. 1991) (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

[28] *See Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1576 (10th Cir. 1995); *Kansas for Life, Inc. v. Gaede*, 38 F. Supp. 2d 928, 934 (D. Kan. 1999).

The decision to certify rests within the discretion of the Court.[29] It is not to be "'routinely invoked whenever a federal court is presented with an unsettled question of state law.'"[30] And, even if there is no state law governing an issue, certification is not compelled.[31]

As noted in this Court's discussion of *Pullman* abstention, this case does not present a question of state law. The case presents a federal constitutional question. While a determination of how the Kansas Supreme Court would enforce the challenged canons in the context of a specific disciplinary proceeding could inform this Court's determination of the constitutional issue, it would not be a controlling precedent, at least on the facial challenge to the canons. Accordingly, defendants' motion to certify is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss (Doc. 14) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that defendant's Motion to Certify a Question of State Law to the Kansas Supreme Court (Doc. 16) is **denied**.

**IT IS SO ORDERED**.

Dated this 6th day of June 2007

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[29]*Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005); *Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996).

[30]*Marzolf*, 924 F. Supp. at 129 (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406 (10th Cir. 1988)).

[31]*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1217 n.22 (10th Cir. 2002); *Boyd Rosene & Assocs. v. Kan. Mun. Gas*, 178 F.3d 1363, 1365 (10th Cir. 1999).

Yost v. Stout, Memorandum and Order, Case No. 06-4122-JAR