ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC R. YOST,                          )
                                       )
                    Plaintiff,         )
                                       )
        vs.                            )        Case No. 06-4122-JAR
                                       )
MIKEL L. STOUT, *et al.*,              )
                                       )
                    Defendants.        )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment (Docs. 50, 52). The motions are fully briefed and the Court is prepared to rule. As explained more fully below, the Court grants in part and denies in part both motions.

**I.     Background**[1]

The Kansas Supreme Court adopted Rules Relating to Judicial Conduct on November 13, 1973.[2] The current Kansas Judicial Code contains five judicial canons that apply to judges and in some cases to judicial candidates.[3] Kan. S. Ct. R. 602 established the Commission on Judicial Qualifications ("the Commission") at the same time the canons were adopted, "to assist the court

_____

[1]There do not appear to be any controverted facts underlying these summary judgment motions, as neither party controverted facts in their responses to summary judgment. *See* Fed. R. Civ. P. 56; D. Kan. R. 56.1(b).

[2]*Kansas Judicial Review v. Stout*, 440 F. Supp. 2d 1209, 1215 (D. Kan. 2006).

[3]Defendants have filed with the Court the 2007 Proposed Kansas Code Draft (Doc. 59). While this draft indicates a number of amendments and changes to the current Code, it has not been made final. The draft indicates that after the public comment period that ended on August 15, 2008, the Commission would again review the draft and submit its final recommendations to the Kansas Supreme Court, along with any public comments received. Therefore, the Court discusses only the governing provisions in the current Kansas Judicial Code.

in the exercise of its responsibility in judicial disciplinary matters."[4]  The Commission is comprised of fourteen members—six active or retired judges, four non-lawyers, and four lawyers appointed by the Kansas Supreme Court.[5]

The Commission is divided into two panels; one is headed by the Chair of the Commission and the other is headed by the Vice-Chair.  The Commission is divided to insure that the panel that conducts the investigation is different from the panel that conducts the hearing, if the case proceeds to the hearing stage.  The disciplinary process begins with the filing of a complaint with the Commission.  The investigatory panel of the Commission then evaluates the complaint and determines an appropriate course of action that can include: dismissal, a letter of caution, informal advice, or public or private cease and desist orders.  If a cease and desist order is resisted by the subject of the complaint, the case goes before the hearing panel.  Moreover, if the investigation panel concludes that formal proceedings should be instituted, it must issue a notice of hearing.[6]  If the hearing panel finds that the charges are proven by clear and convincing evidence, it "shall (1) admonish the judge, (2) issue an order of cease and desist, or (3) recommend to the Supreme Court the discipline or compulsory retirement of the judge."[7]  The hearing panel may also recommend temporary suspension.[8] If the hearing panel finds either that the charges have not been proven or that no recommendation should be made to the

---

[4]Kan. S. Ct. R. 602(a).

[5]R. 602(b).

[6]*See* R. 611.

[7]R. 620.

[8]R. 621.

Supreme Court, then the proceedings are terminated.[9]  The hearing panel's findings of fact and conclusions of law are conclusive in the Supreme Court only if no exceptions are filed by the respondent under Rule 623.

Canon 5 of the Judicial Code generally provides that "A Judge or Judicial Candidate Shall Refrain from Inappropriate Political Activity."  Canon 5 also governs more specific aspects of political activity.  The "endorsement clause" provides that a judge or judicial candidate may not "publicly endorse or publicly oppose another candidate for public office."[10]  The Canon provides for an exception when a judge or candidate publicly endorses or publicly opposes other candidates for the same judicial office in a public election in which the judge or judicial candidate is running.[11]  The commentary to the rule states that a judge or judicial candidate is not prohibited from privately expressing his or her views on judicial candidates or other candidates for public office and that a candidate does not publicly endorse another candidate for public office simply by having their name on the same ticket.

Canon 5 also governs solicitation of campaign contributions under two provisions ("the solicitation clauses").  Under Canon 5A(1)(e), a judge or candidate shall not "solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions."  Canon 5C(2) provides:

> A candidate shall not personally solicit or accept campaign
> contributions or solicit publicly stated support nor shall a candidate
> serve as his or her own campaign treasurer.  A candidate subject to
> public election may, however, establish committees of responsible

---

[9]R. 620.

[10]R. 601A, Canon 5A(1)(B).

[11]*See* R. 601A, Canon 5C(1)(b)(iv).

> persons to solicit and accept reasonable campaign contributions, to
> manage the expenditure of funds for the candidate's campaign and
> to obtain public statements of support for his or her candidacy.
> Such committees may solicit and accept reasonable campaign
> contributions and public support from lawyers.   A candidate's
> committees may solicit contributions and public support . . . no
> earlier than one year before an election and no later than 90 days
> after the last elections in which the candidate participates during
> the election year.[12]

Neither the Kansas Supreme Court nor the Commission has interpreted Canons 5A(1)(b) and (e).

The Kansas Supreme Court has not issued a decision that interprets Canon 5C(2).

Plaintiff is a district court judge in Sedgwick County, Kansas and was a candidate for re-

election in 2008.  Prior to his election to the bench, plaintiff served in the Kansas Legislature as

both a representative and a senator.  He first ran for a seat on the Sedgwick County District

Court in 1996, which involved a contested primary election.  Plaintiff campaigned in the 1996

primary election because it was contested, but since then, he has not run in a contested election

so he has not run a full campaign.  In both 2004 and 2008, plaintiff paid his own filing fee for re-

election because he was concerned about having communications with lawyers about forming a

campaign committee.  Because he was unopposed in the 2008 election, plaintiff did not form a

campaign committee.

After his election to the court in 1996, plaintiff held a post-election fundraiser to pay off

certain personal loans he had obtained to pay for that campaign.  The invitation, which was not

sent to lawyers, suggested a $15 per person donation to attend a general reception and a $250

donation to attend a private reception.  Plaintiff attended both receptions.  A Notice of Formal

Proceedings was filed with the Commission under Kan. S. Ct. R. 611(b) regarding this post-

---

[12]Kan. S. Ct. R. 601A, Canon 5C(2).

4

election fundraiser.  The Commission issued an order finding that plaintiff violated Canon 5C(2) by attending a fundraiser on his behalf where his supporters were expected to make contributions.  By personally attending the fundraiser, the Commission found that he personally solicited campaign contributions.  However, the Commission did not discipline plaintiff for this violation because it had not previously interpreted Canon 5C(2) in this manner.

There are no pending disciplinary proceedings against plaintiff.  Plaintiff has testified that "maybe" he would want to support someone for public office other than his own. Specifically, he testified that he "might want to stand up in a group of 25 people and say, I'm for this guy for governor or Congress or something like that."  The Complaint alleges that plaintiff wishes to publicly endorse and publicly oppose certain political candidates for public office who are not candidates running for judicial office.  Also, plaintiff would like to personally solicit funds from non-attorneys who wish to support him by going door-to-door, making personal phone calls, and signing letters asking for financial support.  Plaintiff does not seek to solicit funds in his official capacity as a judge.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[14]  An issue is only genuine if it "is such that a reasonable jury could return a

---

[13]Fed. R. Civ. P. 56(c).

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

verdict for the nonmoving party."[15]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[16]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[17]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[18]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[19]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[20]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[21]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to

---

[15]*Id.*

[16]*Id.* at 251–52.

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[19]*Id.*

[20]*Id.*

[21]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir.1981)), *cert. denied*, 523 U.S. 1048 (1998).

the nonmoving party and that it may not make credibility determinations or weigh the evidence.[22]

## III.   Discussion

### A.     *Republican Party of Minnesota v. White*

Plaintiff argues that certain judicial canons should be declared unconstitutional under

*Republican Party of Minnesota v. White*.[23]  In *White*, the Supreme Court considered Minnesota

Code of Judicial Conduct, Canon 5(A)(3)(d)(i), the "announce clause," which prohibited judicial

candidates and incumbent judges from announcing their "views on disputed legal or political

issues."[24]

The parties in *White* agreed that strict scrutiny applied.[25]  Strict scrutiny requires the law

be narrowly tailored to further a compelling government interest.[26]  The Supreme Court

identified two compelling state interests argued by respondents: (1) preserving the impartiality of

the state judiciary, and (2) preserving the appearance of the impartiality of the state judiciary.[27]

The Court discussed three alternate meanings of "impartiality" and proceeded to apply the strict

scrutiny test for each.  The first interpretation is a lack of bias for or against either party to a

proceeding.  The Court found that the announce clause was not narrowly tailored to serve this

---

[22]*See Scott v. Harris*, –U.S.–, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[23]536 U.S. 769 (2002).

[24]*Id.* at 770.

[25]*Id.* at 774–75.

[26]*Id.*

[27]*Id.* at 775.

type of impartiality.[28]  The Court found that the announce clause did not restrict speech for or against *parties*, but rather, for or against particular issues.[29]  *Any* party taking a position contrary to that of an announced position of the judge would lose—therefore, the judge would be applying the law (as they see it) evenhandedly.[30]

The second interpretation of impartiality was described as lack of bias on issues, which concerns guaranteeing litigants an equal chance to persuade the court on the legal points in their case.[31]  The Court found that this is not a compelling state interest because "it is virtually impossible to find a judge who does not have preconceptions about the law."[32]  In fact, the Court indicated that the avoidance of judicial preconceptions on legal issues is not only not possible, but not desirable, quoting Justice Rehnquist's observation that "'[p]roof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.'"[33]

The Court described the third interpretation of impartiality as "open-mindedness."  This meaning requires a judge to "be willing to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case."[34]  While not guaranteeing each litigant an equal chance to win legal points, it assures each some chance of doing so.  The

---

[28]*Id.* at 776.

[29]*Id.* at 777.

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.* at 778 (quoting *Laird v. Tatum*, 409 U.S. 824, 835 (1972)).

[34]*Id.*

Court concluded that although this type of impartiality may be desirable, the Minnesota Supreme Court did not adopt the announce clause for this purpose.[35]  The clause is "woefully underinclusive as to render belief in that purpose a challenge to the credulous."[36]

The Court held that the announce clause in Minnesota did not pass strict scrutiny, as there is "obvious tension" between the state's constitutional provision that judges be elected and the announce clause.[37]  Justice Scalia pointed out that "the ABA, which originated the announce clause, has been an opponent of judicial elections. . . . [B]ut the First Amendment does not permit it to achieve its goal by leaving the principle of elections in place while preventing candidates from discussing what the elections are about."[38]  The majority concludes that if the State chooses to utilize elections for judicial selection, "it must accord the participants in that process . . . the First Amendment rights that attach to their roles."[39]

The Eighth Circuit on remand considered the constitutional validity of two other clauses in Minnesota's Canon 5: the partisan activities clause and the solicitation clause.[40]  The en banc Court of Appeals found both Canons unconstitutional in light of the Supreme Court's invalidation of the announce clause.[41]

_____

[35]*Id.*

[36]*Id.* at 780.

[37]*Id.* at 787.

[38]*Id.* at 788.

[39]*Id.*

[40]416 F.3d 738, 744 (8th Cir. 2005) (en banc) [hereinafter *White II*].

[41]*Id.* at 766.

9

**B.** *The Endorsement Clause*

**1.** **Facial Challenge**

The parties disagree about the proper test to apply to determine the constitutionality of the endorsement clause.  Plaintiff urges strict scrutiny applies because it is a content-based regulation that concerns the qualification of candidates.[42]  Defendants urge that an intermediate form of scrutiny applies because the State's interest in preventing judicial bias implicates due process.[43]

The Court will apply strict scrutiny to determine the constitutionality of the endorsement clause.  Like the announce clause, the speech restriction at issue here is content-based—the type of speech regulated is defined by the fact that it is intended "to influence the voters in an election."[44]  "[T]he ability of the citizenry to make informed choices among candidates for office is essential . . . .  When a law burdens core political speech, we apply 'exacting scrutiny.'"[45]

Under strict scrutiny, the Court may uphold the restriction only if it is narrowly tailored to serve a compelling state interest.[46]  Defendants identify the state's interest as preserving a fair and impartial judiciary and preserving the appearance of a fair and impartial judiciary.  Defendants argue that the restriction is narrowly tailored to serve the interest of judicial impartiality, meaning either lack of bias toward a party to a proceeding or open-mindedness.

---

[42]*See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *see also White*, 536 U.S. at 774.

[43]*See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Fund*, 508 U.S. 602, 617 (1993).

[44]*McIntyre*, 514 U.S. at 346 (1995); *see also White*, 536 U.S. at 774 (recognizing that speech about the qualifications of candidates for public office is within a category of speech "at the core of our First Amendment freedoms").

[45]*McIntyre*, 514 U.S. at 346–48.

[46]*White*, 536 U.S. at 774–75.

While the Supreme Court stopped short of finding judicial impartiality in terms of open-mindedness to be a compelling state interest, it strongly suggested that impartiality in terms of lack of bias against parties is a compelling state interest.[47]  The Court explained that this is the common meaning given to judicial impartiality and cited numerous cases standing for the proposition that due process rights are implicated by this meaning of judicial impartiality.[48]  For these reasons, the Court finds that the State has a compelling interest in impartiality or the appearance thereof based on this meaning.

Defendants argue that the endorsement clause is narrowly tailored to serve the State's compelling interest in eliminating judicial bias against a party to a proceeding, or the appearance of judicial bias against a party to a proceeding.  They maintain that other portions of the judicial canons allow judges and judicial candidates to engage in certain political associations and speech.  For example, Canon 5 allows a candidate to purchase tickets for and attend political gatherings, identify himself or herself as a member of a political party, participate in and contribute to political organizations and to their own campaigns, speak to gatherings on his or her own behalf, appear in media advertisements supporting his or her candidacy, distribute pamphlets and other promotional campaign literature supporting his or her candidacy, and publicly endorse or oppose other candidates for the same judicial office in a public election in which the judge or judicial candidate is running.[49]  Defendants argue that since other provisions

---

[47]Courts applying *White* have consistently construed this definition of impartiality as a compelling state interest.  *See, e.g.*, *White II*, 416 F.3d 738, 753–54 (8th Cir. 2005); *Carey v. Wolnitzek*, No. 3:06-36-KKC, 2008 WL 4602786, at *3 (E.D. Ky. Oct. 15, 2008).

[48]*White*, 536 U.S. at 775–76.

[49]*See* Canon 5C(1).

in Canon 5 allow for political speech and associations that would not necessarily curtail bias against parties, the endorsement clause is narrowly tailored to serve the interest of preventing judicial bias against parties.

Plaintiff argues that whether a candidate should be elected or not is a disputed political issue, or an "announcement"; therefore, the Court is bound by *White* to find it fails strict scrutiny. Plaintiff further argues that the State has no compelling interest in preventing political associations by judges or judicial candidates and that recusal is the least restrictive means for preventing judicial bias against parties to a proceeding.

The Court disagrees with plaintiff that the endorsement clause governs "announcements" in the same manner that was held unconstitutional by the Supreme Court in *White*. Unlike Minnesota's announce clause, which the Court found "does not restrict speech for or against particular *parties*, but rather speech for or against particular *issues*,"[50] the endorsement clause clearly restricts speech for or against particular parties. The endorsement clause restricts a judge or judicial candidate from publicly endorsing other candidates for public office; it does not restrict speech concerning disputed political issues. The fact that the announce clause was targeted toward issue-oriented speech was the primary reason why the Court found it did not pass strict scrutiny, as impartiality based on lack of bias for or against a particular legal view is not a compelling state interest. Unlike the announce clause in *White*, this Court finds that the endorsement clause serves the compelling state interest in a lack of bias toward particular parties to a proceeding, or the appearance of such bias.

The Court further finds that the endorsement clause is narrowly tailored to serve judicial

---

[50]*White*, 536 U.S. at 776 (emphasis in original).

impartiality in this sense.  When a case arises in front of a judge who has endorsed one of the parties for public office, there is at least an appearance that the endorsed party is more likely to win based on favoritism toward that party.  The endorsement clause is narrowly tailored to eliminate that scenario.  The endorsement clause, while limiting the judge's or judicial candidate's ability to publicly endorse other candidates for political office, still allows for private endorsements and for endorsements of candidates for the same judicial office in the election that the speaker is a part of.  As such, it is narrowly tailored to serve the State's compelling interest in judicial impartiality, meaning a lack of bias toward parties, or the appearance thereof.[51]

Plaintiff urges that the endorsement clause is overbroad.  The Supreme Court's jurisprudence on overbreadth seeks to balance the threat that an overbroad law will deter constitutionally protected speech and the harmful effects of invalidating a law that in some of its applications is perfectly constitutional.[52]  Therefore, the law's overbreadth must be substantial both in an absolute sense and relative to the law's plainly legitimate sweep.[53]  The court's first task is to determine "whether the enactment reaches a substantial amount of constitutionally protected conduct."[54]  For the doctrine of  "[o]verbreadth is 'strong medicine,' and courts

---

[51]*Accord In re Vincent*, 172 P.3d 605, 608 (N.M. 2007) ("the prohibition against judges making political endorsements is purposefully designed to preclude judges from engaging in conduct that has the potential for creating bias or the appearance of bias for or against a party to a proceeding."); *cf. In re Raab*, 793 N.E.2d 1287, 1292 (N.Y. 2003) (drawing a "critical distinction" between political activity in support of a judicial candidate's own campaign and ancillary political activity in support of other candidates' campaigns).

[52]*See, e.g.*, *United States v. Williams*, 128 S. Ct. 1831, 1838 (2008).

[53]*Id.*; *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005).

[54]*Id.* (quoting *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982)).

'employ[] it with hesitation, and then, only as a last resort.'"[55] A showing of overbreadth "suffices to invalidate *all* enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'"[56]

Plaintiff fails to offer the Court a persuasive example of how the endorsement clause restricts a substantial amount of constitutionally protected speech.  Plaintiff generally focuses on the associational restrictions of the endorsement clause.  He argues that simply associating themselves with another candidate does not pose a threat to judicial impartiality and instead restricts the candidates' ability to express themselves on disputed political issues.  But as the Court has already discussed, the endorsement clause is not aimed at restricting speech on issues; it restricts speech targeted at parties.  There are other provisions in Canon 5 that allow judges and judicial candidates a certain amount of free association in the context of judicial elections. They may still associate with a political party, participate in and contribute to political organizations and to their own campaigns, speak to gatherings on their own behalf, and publicly endorse or oppose other candidates for the same judicial office in a public election in which the judge or judicial candidate is running.  While these activities are permitted under Canon 5, the endorsement clause focuses on the narrower activity of  publicly endorsing candidates for public office.  This restriction is narrowly tailored to serve the State's interest in reducing the likelihood of bias toward parties to a proceeding, or the appearance of such bias and there is no evidence that a substantial amount of constitutional speech is restricted by the endorsement clause.

---

[55]*Faustin v. City and County of Denver, Colo.*, 423 F.3d 1192, 1199 (10th Cir. 2005) (quoting *West v. Derby Unified Sch. Dist.* , 206 F.3d 1358, 1367 (10th Cir. 2000)).

[56]*Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003).

Plaintiff argues that the Court is bound to follow the Eighth Circuit's decision on remand in *White II* that held Minnesota's "partisan activities clause" unconstitutional.[57]  That clause prohibited judges and judicial candidates from identifying themselves as members of a political organization except as necessary to vote in an election and from attending political gatherings, or from seeking, accepting or using endorsements from a political organization.[58]  The Eighth Circuit found that the clauses's prohibitions "are the quintessence of political associational activity" and are important forms of speech.[59]  The court found that, like the announce clause, the partisan activities clause restricted speech for or against particular issues embraced by the political party and so it does not serve the due process rights of parties.[60]  The court explained that the partisan activities clause sought to reduce the risk of judicial bias in any case raising issues that involve a political party that the judge had an affiliation with.[61]

The Court finds the rationale behind the Eighth Circuit's decision on the partisan activities cause in *White II* inapplicable here.  The endorsement clause in the Kansas Code only restricts the judge's or candidate's speech about particular persons; it does not refer to the judge's or candidate's association with political parties.  Indeed, Canon 5 under the Kansas Code allows for a candidate to purchase tickets for and attend political gatherings, identify himself or

---

[57]*See White II*, 416 F.3d 738, 754 (8th Cir. 2005)

[58]*Id.* at 745.

[59]*Id.* at 754.

[60]*Id.* at 755.

[61]*Id.* ("In the case of a political party involved in a redistricting dispute, for example, the fact that the matter comes before a judge who is associated with the Republican or Democratic Party would not implicate concerns of bias for or against that party unless the judge were in some way involved in the case beyond simply having an "R" or "D," . . . after his or her name.").

herself as a member of a political party, participate in and contribute to political organizations and to their own campaigns, speak to gatherings on his or her own behalf, appear in media advertisements supporting his or her candidacy, distribute pamphlets and other promotional campaign literature supporting his or her candidacy, and publicly endorse or oppose other candidates for the same judicial office in a public election in which the judge or judicial candidate is running.  Therefore, far less speech is implicated by the endorsement clause than by the partisan activities clause at issue in *White II*.  More importantly, the speech targeted by the endorsement clause is geared toward particular parties and not issues.  Accordingly, *White II* does not dictate a finding that the endorsement clause is unconstitutional.

### 2.      As-applied Challenge

Plaintiff argues that the endorsement clause is unconstitutional as applied to him because he risks discipline if he endorses a candidate for public office, as he wishes to do during the 2008 campaign.  Defendants argue that plaintiff's desire to endorse is speculative at best, given his deposition testimony that he "might" want to endorse a candidate.  Moreover, defendants urge that there has been no interpretation of the endorsement clause by either the Commission or the Supreme Court that suggests plaintiff would be disciplined.

Defendants' arguments about the speculative nature of the as-applied challenge is essentially a standing challenge, which this Court has already ruled upon.[62]  To the extent defendants argue that the deposition testimony is new evidence upon which this Court should change its ruling on that issue, the Court declines.  The following exchange took place during plaintiff's deposition:

---

[62](Doc. 22.)

Q.      Who do you—who is it, then, even hypothetically
        speaking, who would be somebody who you would like to
        oppose, or do you want to oppose anybody?

A.      Oppose?
        . . . .

A.      –someone?  A generic candidate?  I don't know that I'd
        want to oppose anyone.  I would want to support someone
        maybe.

Q.      So in this particular lawsuit, is it your position that you
        want—you're seeking to endorse somebody, but not
        necessarily oppose anybody?

A.      Right.  I mean, I might want to stand up in a group of 25
        people and say, I'm for this guy for governor or Congress
        or whatever.[63]

Plaintiff went on to add that while he does not wish to oppose a particular person running for

election, he "would like to have the right to say nice things about [a candidate].  That's what I'm

asking for."[64]  Plaintiff urges that providing anymore information, such as who he wishes to

endorse, would amount to conduct that violates the plain language of the endorsement clause.

Construing this evidence in the light most favorable to plaintiff, it supports the fact that plaintiff

wishes to endorse a candidate for public office.  For the reasons already explained in the Court's

previous order, plaintiff has suffered an injury-in-fact with regard to this challenge, even though

the endorsement clause has not been enforced against him.[65]

    As for the merits of the as-applied challenge, it is clear that plaintiff does not wish to

engage in activity other than the activity the Court considered in evaluating the facial challenge

to the endorsement clause—plaintiff, a judge and candidate for judicial election in 2008, wishes

to endorse a candidate for public office.  For the reasons explained above, the Court finds that

---

[63](Doc. 68, Ex. 1 at 186–87.)

[64](*Id.* at 187.)

[65]*See Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).

the endorsement clause, as-applied to plaintiff's endorsement of a candidate, passes strict scrutiny because it is narrowly tailored to serve a compelling state interest in judicial impartiality.  Therefore, defendants' motion for summary judgment on this claim is granted and plaintiff's motion is denied.

**C.     The Solicitation Clauses**

**1.     Facial Challenge**

Plaintiff argues that the solicitation clauses fail strict scrutiny and are overbroad.  In a related case, this Court previously considered Canon 5C(2)'s provision that prohibits candidates from soliciting "publicly stated support."[66]  That issue was before the Court on the plaintiffs' motion for preliminary injunction.  In its Order granting the motion for preliminary injunction on Canon 5C(2), the Court inappropriately enjoined the solicitation of funds provision of the Canon in conjunction with its ruling on the solicitation of publicly stated support provision.[67]  Because the solicitation of funds provision was not properly before the Court at that time, the Court considers its constitutionality for the first time in this matter.

The solicitation clauses prohibit candidates from soliciting funds for a political organization or candidate, and from personally soliciting campaign contributions.[68]  Judicial candidates are permitted however, to establish a campaign committee that may solicit campaign

---

[66]*Kansas Judicial Review v. Stout*, 440 F. Supp. 2d 1209 (D. Kan. 2006).

[67]*See Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1122 (10th Cir. 2008) (certifying questions to the Kansas Supreme Court and finding that this Court's preliminary injunction order went beyond the scope of plaintiff's challenge by enjoining the entire canon, rather than the publicly stated support portion only and vacating this Court's order to the extent it enjoined the solicitation for funds portion of the canon).  The Court notes that, in the briefs, which were considered on an expedited basis, plaintiffs focused only on the public support portion of the clause, while defendants emphasized the contributions portion of the clause.

[68]Kan. S. Ct. R. 601A, Canons 5A(1)(e), 5C(2).

contributions.   Federal courts have considered the constitutionality of solicitation clauses in four cases.[69]  All of these courts applied strict scrutiny.[70]  This Court follows their lead and finds strict scrutiny applies because the solicitation clauses involve content-based speech, i.e. requests for funds for a political campaign.[71]  While defendants are correct that restrictions on campaign contributions are reviewed under the intermediate scrutiny framework discussed in *Buckley v. Valeo*,[72] the restrictions here target the requests for such contributions, not the contributions themselves.  "[T]he very nature of the speech that the solicitation clause affects invokes strict scrutiny . . . because the clause applies to requests for funds to be used in promoting a political message."[73]

Defendants articulate the state's interest with regard to the solicitation clauses as follows: (1) to protect the judiciary from the corrupting effects of personal solicitation, and (2) the stake of the public in a judiciary that is honest in fact and in appearance.  The Court finds no meaningful difference between these formulations of the state interest and judicial impartiality, either meaning the lack of bias against parties to a proceeding or open-mindedness as discussed in *White*.  Defendants urge that while elections require the collection of money and campaign

---

[69]*White II*, 416 F.3d 738 (8th Cir. 2005) (en banc); *Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002); *Stretton v. Disciplinary Bd. of Sup. Ct. of Pa.*, 944 F.2d 137 (3d Cir. 1991); *Carey v. Wolnitzek*, No. 3:06-36-KKC, 2008 WL 4602786, at *14–18 (E.D. Ky. Oct. 15, 2008).

[70]*White II*, 416 F.3d at 763–64; *Weaver*, 309 F.3d at 1318–19, 1322; *Stretton*, 944 F.2d at 141–42; *Carey*, 2008 WL 4602786, at *14.

[71]*White II*, 416 F.3d at 764 ("Insofar as the solicitation clause restricts the amount of funds a judicial candidate is able to expend on his or her political message, the regulation is of the same caliber as that struck down in *Buckley*."); *Carey v. Wolnitzek*, No. 3:06-36-KKC, 2006 WL 2916814, at *17 (E.D. Ky. Oct. 10, 2006) ("the Solicitation Clause restrict[s] candidates' speech during elections.  Further, the restrictions are content-based, . . .").

[72]424 U.S. 1 (1976); *see McConnell v. F.E.C.*, 540 U.S. 93, 134–35 (2003) .

[73]*White II*, 416 F.3d at 764.

expenditures, the state can and should "draw a line at the point where the coercive effect, or its appearance, is at its most intense—personal solicitation by the candidate."[74]

First, defendants claim that the solicitation clauses are narrowly tailored to serve the state's compelling interest in a lack of judicial bias toward parties, or the appearance of such bias. To be sure, solicitations of judicial campaign funds "leads to the unseemly situation in which judges preside over cases in which the parties are represented by counsel who have contributed in varying amounts to the judicial campaigns."[75] Defendants add that the clauses seek to avoid those solicited from feeling obligated or coerced into contributing as they would when a judicial candidate personally makes the request. The problem with the solicitation clauses, however, is that even if the candidate does not personally solicit funds, he or she may find out who contributed to the campaign, and the amount of that contribution.[76] Eliminating personal solicitation but allowing for a campaign committee to solicit funds is an underinclusive means of preventing bias toward parties or their lawyers.[77] Moreover, while it may be less difficult for a solicitee to decline a request for a contribution when the request is made by a committee, "the state does not have a compelling interest in simply making it more comfortable

---

[74]*Stretton*, 944 F.2d at 145.

[75]*Id.*

[76]This is a point of distinction with the solicitation clause at issue in *White II*, which provided that the candidate's committee "shall not" disclose information about contributors to the candidate. *White II*, 416 F.3d at 765. The court in *White II* found that that solicitation clause was not narrowly tailored because the proposed judicial conduct—reproducing the candidate's signature on a contribution letter and requesting contributions from large assemblies of voters—would not provide the candidate with information about who did or did not contribute to the campaign. *Id.* at 765–66.

[77]Moreover, the fact that the subject of solicitation feels more comfortable to "just say no" to the campaign committee, as opposed to the candidate himself or herself, does not serve the state's compelling interest in impartiality because those who opted not to contribute could still be identified by committee members, "or indirectly [identified] through a process of elimination." *Carey v. Wolnitzek*, No. 3:06-36-KKC, 2006 WL 2916814, at *18 (E.D. Ky. Oct. 10, 2006)

for solicitees to decline to contribute to judicial campaigns."[78]

The clause is no more narrowly tailored to serve the state's interest in lack of the appearance of bias toward parties because the public's perception of judicial bias is unlikely to be highly affected by the use of a committee to solicit funds.  As the court in *Carey* pointed out,

> If the public does not believe that elected judges favor their contributors, then the committee serves no purpose in preserving that appearance of impartiality. If, on the other hand, the public believes that elected judges favor their contributors, then the fact that contributions are solicited by a committee instead of the judge himself does nothing to dispel that perception. In fact, many members of the general public are likely unaware that judges are not permitted to personally solicit contributions to their campaigns. Those who are aware of the prohibition are likely also aware that, despite the prohibition, judges can still find out who contributed to them and who did not. Thus, the ban on personal solicitation does nothing to preserve the appearance of judicial impartiality.[79]

Additionally, as the Eleventh Circuit pointed out, "[t]he impartiality concerns, if any, are created by the State's decision to elect judges publicly.  Campaigning for elected office necessarily entails raising campaign funds."[80]  Eliminating judicial elections would certainly be a less restrictive alternative to eliminate the potential for actual and apparent bias against parties without restricting content-based speech.  Additionally, the recusal canon offers a less restrictive alternative in cases where a judge's personal solicitation of campaign funds may cause judicial bias, or the appearance of bias to a party to a proceeding before the judge.[81]

Next, defendants urge that the solicitation clauses are narrowly tailored to protect the

---

[78]*Carey*, 2008 WL 4602786, at *16.

[79]*Carey*, 2006 WL 2916814, at *18.

[80]*Weaver v. Bonner*, 309 F.3d 1312, 1322 (11th Cir. 2002).

[81]*See* Kan. S. Ct. R. 601A, Canon 3E(1)

judiciary from the corrupting effects of personal solicitation.  Corruption of the judiciary is only

a state interest because such corruption could lead to preferential treatment of litigants who

contribute funds to the judge's election campaign.  Further, "'[o]pen-mindedness,' in Justice

Scalia's terminology, is simply a facet of the anti-corruption interest that was recognized in

*Buckley v. Valeo* and subsequent campaign finance cases."[82]  Open-mindedness requires that

judges be willing to consider views that oppose their preconceptions and remain open to

persuasion when such views are presented in a pending case.[83]  Assuming open-mindedness is a

compelling interest, the State is unable to show that the solicitation clauses are narrowly tailored

to serve this compelling state interest for many of the reasons already discussed.  The fact that

the solicitation clause in Canon 5C(2) allows for solicitation of funds by a campaign committee

does not assure that the candidate is unaffected or even unaware of who does and does not

contribute to the campaign.  As such, the clauses are underinclusive in serving the purpose of

open-mindedness.[84]

      Finally, the Court finds that the solicitation clauses are also overinclusive as a means of

serving the state interest in judicial impartiality.  The fact that judicial campaigning requires

candidates to garner public support and campaign contributions does not, in itself, suggest that

candidates will be partial to their endorsers or contributors once elected.  The recusal canon is

narrowly tailored to cure any impartiality that may result from a candidate personally soliciting

---

[82]*White*, 416 F.3d at 769 (Gibson, J., dissenting) (citing *Buckley v. Valeo*, 424 U.S. 1, 26–27 (1976)).

[83]536 U.S. 769, 778 (2002).

[84]Moreover, as the *Carey* court noted, "there are already judicial canons and various criminal statutes which should serve to deter judges from [] extortion," to the extent that defendants contend that the clause is designed to prevent actual *quid pro quo* payments for rulings.  *Carey*, 2008 WL 4602786, at *17.

contributions.  If such solicitation prevents a successful candidate from being impartial in any specific case or controversy, that candidate has an obligation to recuse himself or herself under Canon 3E(1).

The Court grants plaintiff's motion for summary judgment on the solicitation clauses and denies defendants' motion for summary judgment.

### 2.      As-applied Challenge

A facial challenge under the First Amendment requires the Court to consider the speech restriction as a whole, while an as-applied challenge "tests the application of that restriction to the facts of a plaintiff's concrete case."[85]  Plaintiff testified in his deposition that he does not wish to solicit money from attorneys, but did wish to personally solicit funds from non-attorneys who wish to support him by going door-to-door, making personal phone calls, and signing letters.  The fact that plaintiff remained unopposed in the 2008 election does not eliminate application of the solicitation clauses to his candidacy, or to a future re-election campaign. Therefore, summary judgment is granted in plaintiff's favor on his as-applied challenge to the solicitation clauses.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Summary Judgment (Doc. 50) is **granted in part and denied in part**.  The motion is **granted** on the solicitation clauses, Canons 5A(1)(e) and 5C(2) and **denied** on the endorsement clause, Canon 5A(1)(b).  Defendants' Motion for Summary Judgment (Doc. 52) is **granted in part and denied in part**. The motion is **denied** on the solicitation clauses, Canons 5A(1)(e) and 5C(2) and **granted** on the endorsement clause, Canon 5A(1)(b).

---

[85]*Faustin v. City & County of Denver, Colo.*, 423 F.3d 1192, 1196 (10th Cir. 2005).

**IT IS SO ORDERED**.


Dated:  November 16, 2008

                       S/ Julie A. Robinson
                      JULIE A. ROBINSON
                      UNITED STATES DISTRICT JUDGE