ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERIC R. YOST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 06-4122-JAR |
| | ) |
| MIKEL L. STOUT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the plaintiff's Renewed Motion for Attorneys' Fees (Doc. 84). Plaintiff requests attorneys' fees and expenses in the amount of $43,014.97 for the Bopp, Coleson & Bostrom law firm and $1210.00 for Austin K. Vincent, who served as local counsel. Defendants have responded and claim that the requested amount is unreasonable. As explained more fully below, the Court awards reasonable attorneys' fees and expenses in the amount of $27,040.57.

**I. Background**

Plaintiff's Complaint alleged constitutional challenges to the Kansas Judicial Code pursuant to 42 U.S.C. § 1983. Specifically, plaintiff challenged the constitutionality of the "endorsement clause"[1] and "the solicitation clauses."[2] On November 16, 2008, the Court ruled

---

[1] The "endorsement clause" provided that a judge or judicial candidate may not "publicly endorse or publicly oppose another candidate for public office." Kan. S. Ct. R. 601A, Canon 5A(1)(b). The Kansas Judicial Code has been amended since summary judgment was entered in this case. The endorsement clause now appears in Rule 4.1(B)(2). Kan. S. Ct. R. 601B, R. 4.1(B)(2) (effective Mar. 1, 2009).

[2] Under the previous Canon 5A(1)(e), a judge or candidate shall not "solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions." Canon 5C(2) provided:
  A candidate shall not personally solicit or accept campaign contributions or solicit

on cross-motions for summary judgment (Doc. 72). Plaintiff's Motion for Summary Judgment (Doc. 50) was granted on the solicitation clauses, Canons 5A(1)(e) and 5C(2) and denied on the endorsement clause, Canon 5A(1)(b). Defendants' Motion for Summary Judgment (Doc. 52) was denied on the solicitation clauses, Canons 5A(1)(e) and 5C(2), and granted on the endorsement clause, Canon 5A(1)(b). On summary judgment, the parties and the Court applied the same analysis and arguments to both solicitation clauses.

The Court determined that plaintiff is entitled to reasonable attorneys' fees and expenses as a "prevailing party" under 42 U.S.C. § 1988 in its April 9, 2009 Memorandum and Order (Doc. 78). The Court was unable to perform the next inquiry in ruling on the motion for attorneys' fees, that is the reasonableness of the fee request, because plaintiff had not provided the Court with any evidence to support the reasonableness of his fee request.[3] The Court directed the parties to brief the issue of reasonable fees under the governing law.

On November 24, 2009, in response to an order to show cause, plaintiff submitted his statement of consultation, required by D. Kan. R. 54.2 (Doc. 90). Plaintiff advised that his counsel consulted with opposing counsel on November 20, 2009 and that the parties were unable to reach an agreement on a fee award. While this consultation was obviously not "promptly

---

publicly stated support nor shall a candidate serve as his or her own campaign treasurer. A candidate subject to public election may, however, establish committees of responsible persons to solicit and accept reasonable campaign contributions, to manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees may solicit and accept reasonable campaign contributions and public support from lawyers. A candidate's committees may solicit contributions and public support . . . no earlier than one year before an election and no later than 90 days after the last elections in which the candidate participates during the election year.

Kan. S. Ct. R. 601A, Canon 5C(2). The solicitation clauses have been significantly amended by Kan. S. Ct. R. 601B, R. 4 since the entry of summary judgment.

[3]*See Browder v. Moab*, 427 F.3d 717, 721 (10th Cir. 2005); *Phelps v. Hamilton*, 120 F.3d 1126, 1130–31 (10th Cir. 1997).

2

initiated by the moving party," as provided for in the rule, the Court finds that the parties are unable to reach an agreement about the attorney fee request in this matter and proceeds to determine a reasonable fee award.

## II. Discussion

In determining reasonable attorneys' fees, the court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.[4] The applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[5] Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[6] The Court may then adjust the lodestar upward or downward as necessary.[7]

### A. *Lodestar Amount*

#### 1. **Number of Hours Reasonably Expended**

The Court must first determine the amount of hours reasonably expended by counsel for plaintiff.[8] In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation

---

[4]*Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[5]*See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

[6]*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[7]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

[8]*Case*, 157 F.3d at 1250.

is requested and how those hours were allotted to specific tasks."[9]  "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[10]  The Court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[11]

After the Court determines whether counsel exercised billing judgment, it must evaluate the hours expended on each task and determine if they are reasonable.[12]  This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services.[13]  But there is no requirement that the Court "identify and justify each disallowed hour.  Nor is their [sic] any requirement that district courts announce what hours are permitted for each legal task."[14]

Plaintiff's counsel claim that they exercised billing judgment by reducing the hours spent on excessive, redundant or otherwise unnecessary hours.  Specifically, counsel claim to have excluded hours spent preparing a motion for preliminary injunction and temporary restraining order, as counsel ultimately decided not to pursue these remedies.  But as defendants point out, the attached billing invoices do not support this contention.  There are 7.1 hours attributed to

---

[9]*Id*. (citation omitted).

[10]*Robinson*, 160 F.3d at 1280.

[11]*Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

[12]*Case*, 157 F.3d at 1250.

[13]*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[14]*Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)).

counsel Josiah Neeley and Thomas Marzan for these tasks. The Court will deduct these hours in determining the reasonable hours spent on the litigation.

In his declaration, counsel James Bopp states that he

> reviewed and approved the time charged on the attached invoices, and have exercised appropriate billing judgment to ensure that all charges were reasonable and necessary to this litigation. Through the exercise of billing judgment I have decided not to charge for 36 hours that were originally billed by attorneys at my firm for time spent and for related expenses pursuing the losing claim regarding Kansas Judicial Code Canon 5(A)(1)(b), or time otherwise deemed redundant or unnecessary in the exercise of billing judgment.[15]

The invoices support Bopp's statement that his law firm reduced its charges; however, the invoices show that the firm reduced its charges for 39.6 hours, not 36.[16] Yet none of the entries specify the reason for the reduction, i.e. because they are redundant or because they were for hours spent on unsuccessful claims. Nonetheless, the Court has reviewed the invoices submitted by both Bopp, Coleson & Bostrom and by local counsel, Austin K. Vincent, and is generally satisfied that, after reducing time spent on the temporary restraining order and preliminary injunction motions that were not pursued, these attorneys exercised appropriate billing judgment to ensure that their charges were reasonable and necessary to this litigation by eliminating 16.9 hours. Therefore, the Court proceeds to consider whether the time spent on various tasks was reasonable under the circumstances.

Plaintiff seeks fees for a total of 232.5 hours of work performed by out-of-state counsel and 6.05 hours spent by local counsel between October 26, 2006 and May 1, 2009. Their work was billed by nine timekeepers. Defendants object to the hours billed by plaintiff's attorneys on

---

[15](Doc. 84, Bopp Decl. ¶ 15.)

[16]*Id.*, Exs. C–D.

the following grounds: (1) plaintiff's billing records are vague and failed to reduce the hours expended on the unsuccessful endorsement clause claim; (2) the case was overstaffed resulting in an excessive number of hours charged; (3) plaintiff should not recover for the hours billed preparing and researching the motion for attorneys' fees; and (4) plaintiff is not entitled to fees for hours spent initiating the appeal or on administrative procedures.

*Specificity of billing descriptions and time spent on unsuccessful claims*

While defendants challenge plaintiff's billing records for lack of specificity and detail, this argument is really part and parcel of their general argument that plaintiff is not entitled to recover for hours spent on the unsuccessful claim challenging the endorsement clause. They argue that because the billing entries are not broken down by claim, the Court is not able to determine how to apportion the hours between the successful and unsuccessful claims. Given this vagueness, defendants advocate eliminating the hours claimed by plaintiff across the board by 50%. Plaintiff, conceding that he should not recover for hours spent on the unsuccessful challenge to the endorsement clause, attempts to apportion the hours spent on drafting and filing (1) the Complaint, (2) plaintiff's memorandum in support of summary judgment, (3) the response to defendants' motion for summary judgment, and (4) the reply to defendants' response to plaintiff's motion for summary judgment. Defendants dispute the percentages that plaintiff determined should apply to counsel's work on these various filings.

As an initial matter, the Court finds that counsel's invoices are sufficiently detailed. Each entry informs the Court of how the time was spent and whether the work was redundant or unnecessary. There are no generic references to "research" or "conference" and counsel did not engage in block billing or bill time for background research or familiarization with the general

area of the law.[17] While it is true that the billing entries are not broken down by claim, defendants point this Court to no authority for the proposition that the time records must specify work on each distinct claim at issue in a case in order to demonstrate entitlement to fees.

Defendants argue that plaintiff's hours should be further reduced because they do not adequately reflect plaintiff's partial success in this case. They urge that the Court should award only 50% of the fees and expenses that the Court finds are reasonable. This issue is most commonly addressed by courts after the lodestar is calculated, in deciding whether it should be adjusted downward to reflect partial success.[18] The Court will follow this approach since, as noted above, the billing records do not allow for a reduction in specific hours spent on the unsuccessful claim.[19] Therefore, for the purpose of the lodestar calculation, the Court must add back in the reasonable hours expended on the litigation as a whole, including the time spent on plaintiff's unsuccessful endorsement clause challenge. The Court has identified 22.7 hours that plaintiff had reduced for time spent on drafting and filing the Complaint, motion for summary judgment, and the response and reply to the cross motions for summary judgment.[20]

### *Overstaffing*

---

[17]*See, e.g.*, *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998).

[18]*See Holland v. GMAC Mortgage Corp.*, No. 03-2666-CM, 2007 WL 293931, at 2 n.2 (D. Kan. Jan. 29, 2007) (collecting cases).

[19]In *Hensley*, the Supreme Court explained that the lodestar does not end the inquiry because a fee adjustment upward or downward may be justified by such factors as the "results obtained." 461 U.S. 424, 434 (1983). The Court stated: "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success . . . in light of the considerations we have identified." *Id.* at 436.

[20]The remaining 16.9 discounted hours appear to be hours reduced in the exercise of billing judgment for redundancies and administrative tasks.

Defendants complain that plaintiff utilized too many attorneys in this case, many of whom began late in the case and, therefore, necessarily spent time "coming up to speed on this matter." While it is true that time spent reviewing background material on the case by new attorneys is not compensable,[21] defendants fail to point the Court to any examples of this in the billing records. Bopp states in his affidavit that

> In order to minimize expenses, most time-intensive work was delegated to Mr. Neeley and Ms. Woudenberg, who have lower hourly billing rates than myself. However, to take advantage of my own extensive experience, frequent conferences enabled me to instruct and supervise their work and to ensure that the case was properly and effectively litigated. Access to my expertise and the cumulative briefing and research of my firm enables my associates to efficiently produce a high quality of legal representation.[22]

The billing invoices support Bopp's contention. Approximately two-thirds of the hours submitted were billed by Neeley and Woudenberg. Jeffrey Gallant and Kaylan Phillips also billed a large amount of hours. The billing records show that these two attorneys did almost all of the work on the motions for attorneys' fees. There is no indication that these timekeepers billed time researching background material. The Court declines to reduce the amount of hours requested by plaintiff on the basis that the case was overstaffed.

### *Hours spent on the motions for attorneys' fees*

Defendants argue that plaintiff should not recover for hours spent on preparing the requests for attorneys' fees and expenses. Again, defendants argue that the amount of hours claimed on these tasks is unreasonable because it must have necessarily involved time spent

---

[21] *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1256–60 (10th Cir. 2005) ("time spent reading background material designed to familiarize an attorney with an area of the law is presumptively unreasonable.").

[22] (Doc. 84, Bopp Decl. ¶ 11.)

getting up to speed since the attorneys who billed that time were new.

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."[23] The Court has reviewed the billing records involving the work on plaintiff's fee requests. The approximately 30 hours expended on these motions involved preparing the fee request, a ten-page supporting memorandum, and documentation in support of the hours and rate requested. The vast majority of work on the various attorney fee motions is set forth in Exhibit D to the Bopp Declaration. A portion of this time was spent reviewing the work produced by other attorneys in order to determine how to apportion the time spent on the successful and unsuccessful claims—about 4.5 hours. The Court agrees that the time spent on this task was excessive and reflective of the fact that new attorneys, who had not worked on the dispositive motions, were tasked with preparing the fee requests. Certainly, those attorneys who had prepared the Complaint and the various filings associated with summary judgment could have reviewed the amount of time they spent on this work more efficiently, and in less than 4.5 hours. Therefore, the Court will reduce the amount of hours requested for Gallant and Phillips by a total of two hours to compensate for time necessarily spent getting up to speed on the dispositive issues in the case in order to prepare the fee application. The Court is unable to conclude that these remaining hours are "obviously inflated to an intolerable degree" warranting the sanction of disallowing recovery for time spent preparing and presenting the fee application.[24]

---

[23]*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998).

[24]*Id.* at 1255.

*Time spent on unrelated matters and administrative tasks*

Finally, defendants argue that certain specific time entries should be excluded because they are not related to this litigation. Specifically, defendants point to: (1) an entry for .80 hour by Woudenberg on May 12, 2008: "Review stipulated appendix table of contents from Marizol; draft e-mail to Marisol regarding same," on the grounds that it pertains to *Kansas Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009); (2) an entry for .10 hour by Neeley on September 30, 2008: "E-mail from local counsel regarding intervenor"; and (3) an entry for .20 hour by Bopp on October 1, 2008: "Review 4th Circuit docketing of appeal; conference with Josiah Neeley regarding appeal."

The Court agrees with defendants that these entries should be excluded. The first item appears to pertain to an appeal; no filing in this case around that time included an appendix or table of contents. And this case was not on appeal at that time. The second entry concerns a *pro se* prisoner's motion to intervene in this case, filed in August 2008. Without requiring a response from the parties, the Court disposed of this motion and denied intervention (Doc. 61). The *pro se* prisoner filed an interlocutory appeal that was terminated without judicial action for lack of prosecution. The Court finds that any charge for time spent on this portion of the case is unreasonable and will exclude this time. Finally, the Court agrees that Bopp's entry on October 1, 2008 appears to be for an appeal unrelated to this matter and excludes this time as well.

Defendants also state that hours spent on clerical or administrative tasks that have not been previously excluded should be deducted. The only examples defendants provide, however, are entries that have already been excluded by plaintiff's counsel. "Purely clerical or secretarial

tasks should not be billed at a paralegal rate, regardless of who performs them."[25]  The Court has reviewed the billing invoices and is unable to locate other examples of counsel performing clerical or administrative tasks that have not already been excluded.

The Court finds that plaintiff's counsel reasonably spent 251.05 hours on this litigation. In addition to defendants' challenges to the hours billed by plaintiff's counsel, the Court has considered the complexity of the case. While this case did not involve complex factual averments, the legal issues were sufficiently complex to warrant the hours expended. This case presented novel issues surrounding application of the First Amendment to various judicial canons in light of the Supreme Court's decision in *Minnesota v. White*.[26] These issues necessitated a motion to dismiss, a motion to certify questions to the Kansas Supreme Court, and cross motions for summary judgment. The Court further finds that plaintiff's counsel pursued a reasonable number of reasonable strategies in this matter, that their responses were necessitated by the motions filed in this case, and no obvious duplication of services. Therefore, the Court proceeds to consider the reasonable rate for these attorneys.

### 2. Reasonable Rate

In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[27] "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area

---

[25]*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

[26]536 U.S. 769 (2002).

[27]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

in which the litigation occurs would charge for their time."[28] In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[29]

Plaintiff requests rates ranging from $150 to $275 for the attorneys involved in this matter. Plaintiff requests hourly rates of $275 for Bopp, $250 for Rich Coleson and Tom Marzan, $180 for Gallant, $170 for Josiah Neeley and Anita Woudenberg, $160 for Troupis and $150 for Kaylan Phillips. Plaintiff submitted the following evidence in support of these rates: (1) the declaration of Joseph Patton, an attorney practicing for 31 years in Topeka, Kansas; (2) Bopp's declaration; (3) Vincent's declaration; and (4) rates awarded in other civil rights cases in this district. Defendants object to the rates sought by plaintiff, arguing that they are based on rates in Kansas City, and are unreasonably high for attorneys of comparable skill and experience in the Topeka, Kansas market. Defendants attach the declaration of Michael Leitch to support their request that the Court utilize lower rates than those plaintiff requests.

Bopp's declaration states that the requested rates are in line with the prevailing market rates for attorneys with comparable skill and experience in Wisconsin. He also states that the rates are lower than his firm's normal billing rates that are charged and paid by clients in comparable cases. But Wisconsin is not the appropriate market in this case. The relevant community in determining a reasonable rate is the place where the litigation occurs.[30] Therefore, Bopp's declaration is not probative for purposes of determining a reasonable rate in this case.

---

[28]*See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998).

[29]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

[30]*See Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1200 (D. Kan. 2005).

12

Patton's declaration establishes that he has extensively practiced in the state and federal courts in and around Topeka and that he is familiar with the market rates for attorneys who litigate in and around Topeka. Patton practices in the field of personal injury and workers' compensation. Patton provides estimates of billing rates in the Topeka market and in his own law firm for attorneys who are involved in civil litigation, as follows: attorneys with 20 years' or more experience charge $200-250 per hour; attorneys with between 12 and 20 years' experience charge $190-200 per hour; attorneys with between 8 and 12 years' experience charge $170-190 per hour; and fifth year associates charge $160-170 per hour.

Leitch states in his declaration that he is a Deputy Attorney General for the State of Kansas who has practiced in both the Topeka and Kansas City areas. He has practiced in the areas of civil rights, labor and employment, personal injury, constitutional law, and business litigation. One of his responsibilities as Deputy Attorney General is hiring counsel to defend the State, so he is familiar with the prevailing market rates for attorneys who practice civil litigation in and around Topeka. He estimates the following prevailing market rates for attorneys practicing complex civil litigation in Topeka: attorneys with 20 years' or more experience charge $175-220 per hour; attorneys with between 10 and 19 years' experience charge $150-200 per hour; attorneys with between 5 and 9 years' experience charge $135-180 per hour; and attorneys with between 1 and 4 years' experience charge $125-160 per hour.

With regard to out-of-state counsel rates, the Court is essentially presented with "dueling declarations." While their rate estimates substantially cross-over one another, the Court will rely on Leitch's declaration over Patton's for the following reasons. First, Leitch's declaration establishes that he has a greater familiarity with rates in the Topeka market for litigation that

13

involves civil rights cases. Patton's declaration does not establish that he is as familiar with other attorneys' rates in Topeka that would include civil rights litigators. Second, Leitch sets forth a rate for attorneys with four years or less experience; Patton's does not. While plaintiff fails to state the experience level of its attorneys, it appears clear from many of their requested rates that some of these attorneys have been in practice for less than five years.

The Court has reviewed the experience level of the attorneys from Bopp, Coleson, and Bostrom who billed time in this matter,[31] and finds that the following rates are appropriate, given the evidence of market rates provided in the Leitch declaration.[32]

| **Attorney** | **Rate** |
| --- | --- |
| Bopp | $220 |
| Marzan | $200 |
| Coleson | $175 |
| Gallant | $160 |
| Woudenberg | $150 |
| Neeley | $150 |
| Troupis | $135 |
| Phillips | $125 |

Vincent submitted an affidavit in support of his hourly rate request of $200, stating that it is a prevailing market rate for an attorney with comparable skill and experience—he has been in practice since 1982. While the Court agrees with defendants that Vincent's participation in this

---

[31](Doc. 84, Bopp Decl., Ex. B.)

[32]The Court finds that these rates are further supported by other fee rates awarded in civil rights cases originating in the Topeka, Kansas community. *See Meyer v. Nava*, No. 04-4099-RDR, 2008 WL 58819, at *2 (D. Kan. Jan. 3, 2008); *Wirtz*, 355 F. Supp. 2d at 1203. However, the Court notes that when it "is presented with sworn affidavits from both parties that the market commands rates at a certain level, the court must elevate the dictates of the market above its customary rate." *Case*, 157 F.3d at 1256.

case was limited to non-substantive work required of local counsel, the Court views this as sufficiently reflected in the nominal amount of hours he expended performing this role. His requested rate is within the range found to be the prevailing market rate for attorneys in Topeka with his experience, so the Court will apply the $200 hourly rate.

### 3. Lodestar Calculation

Given the above findings, the Court calculates the lodestar as follows:

| Attorney | Hours submitted | Addition for other claim | Reduce for TRO time | Reduce for Fee request | Reduce for unrelated matters | Total Hours | Rate | Total |
|---|---|---|---|---|---|---|---|---|
| Bopp | 4.2 | 0 | 0 | 0 | .2 | 4 | $220 | $880 |
| Coleson | .4 | 0 | 0 | 0 | 0 | .4 | 175 | 70 |
| Marzan | 7.4 | .5 | .4 | 0 | 0 | 7.5 | 200 | 1500 |
| Gallant | 61.3 | 0 | 0 | 1.8 |  | 59.5 | 160 | 9520 |
| Neeley | 133.1 | 21.4 | 6.7 | 0 | .1 | 147.7 | 150 | 22,155 |
| Phillips | 6.7 | 0 | 0 | .2 | 0 | 6.5 | 125 | 812.50 |
| Troupis | .7 | 0 | 0 | 0 | 0 | .7 | 135 | 94.5 |
| Woudenberg | 18.7 | .8 | 0 | 0 | .8 | 18.7 | 150 | 2805 |
| Vincent | 6.05 | 0 | 0 | 0 | 0 | 6.05 | 200 | 1210 |
| Total | 238.55 | 22.7 | 7.1 | 2 | 1.1 | 251.1 |  | $39,047 |

### B. *Adjustment of Lodestar*

"The lodestar is the presumptively reasonable fee."[33] "'The product of reasonable hours times a reasonable rate does not end the inquiry,' however, of determining whether a fee is

---

[33]*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1493 (10th Cir. 1994).

reasonable."[34] The court may adjust the lodestar upward or downward if necessary.[35] In fashioning the ultimate award, the Court may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*,[36] although many of those factors are subsumed within the lodestar calculation.[37]

In evaluating whether the lodestar should be adjusted when the prevailing party achieves only partial success, the Court should consider: (1) whether plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."[38] In considering whether a downward adjustment for partial success on related claims is warranted, the court should not consider the case "as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[39]

The Supreme Court explained in *Hensley* that when one lawsuit presents distinctly different claims for relief that are "based on different facts and legal theories," congressional intent "requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."[40] Here,

---

[34]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 434 (1983)), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

[35]*Metz*, 39 F.3d at 1493.

[36]488 F.2d 714, 717–19 (5th Cir. 1974).

[37]*See Hensley*, 461 U.S. at 434 n.9.

[38]*Id.* at 434.

[39]*Id.* at 435.

[40]*Id.*

16

the claims associated with the endorsement clause and solicitation clauses are based on different facts. The as-applied challenge to the endorsement clause was based on plaintiff's desire to endorse certain candidates for political office. The as-applied challenge to the solicitation clauses was based on plaintiff's desire to personally solicit funds from non-attorneys who wish to support him by going door-to-door, making personal phone calls, and signing letters. The facial challenges were based on distinctly different judicial canons. While all of plaintiff's claims in this case involved First Amendment challenges, they were not "alternate legal grounds for a desired outcome."[41]

Moreover, in evaluating the overall level of success achieved, the Court is unable to conclude that the lodestar is a satisfactory basis for the fee award. Plaintiff sought to obtain declaratory and injunctive relief with regard to three canons, two of which involved identical arguments and an identical factual basis. He achieved success on the solicitation clauses only. Plaintiff did not obtain declaratory or injunctive relief on the endorsement clause, relief that would have been entirely distinct from the relief sought on the solicitation clauses. The Court finds that the expenditure of counsel's time was excessive in relation to the success achieved, and therefore, the lodestar must be reduced accordingly.

The Supreme Court cautioned that there is "no precise rule or formula" for reducing the lodestar when the prevailing party achieves only partial success. The Court has reviewed the billing invoices and determines that a reduction of 35% is appropriate in this case. The Court rejects a flat 50% reduction in hours spent as a mechanical approach to the lodestar reduction that would not appropriately account for the time spent by plaintiff's counsel on work that was

---

[41]*See id.* at 436.

common to all claims in this matter, or on matters subsequent to the summary judgment order. The Court finds that this reduction accounts for relative success of plaintiff's claims and awards $25,380.55 in reasonable attorneys' fees.

C.    *Nontaxable Costs (Expenses)*

Plaintiff seeks $1952.97 in expenses. The Tenth Circuit has explained that "reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate."[42] Plaintiff requests the following categories of expenses in their fee application: (1) online research, (2) telecommunications such as long distance fees, and (3) express mail. Plaintiff's counsel has already written off some of the computer assisted legal research entries that relate to summary judgment briefing. And it appears that plaintiff's counsel exercised billing judgment by writing off charges that were redundant or duplicative. Defendants do not challenge any specific billing entries, but generally request that the total expenses be apportioned at the same rate as the attorneys' fees are apportioned.

While it is apparent from the billing invoices that plaintiff's counsel reduced their charges for some of the work performed on summary judgment, there are a number of charges for computer assisted legal research at the beginning of this case that were not reduced at all. And, there is no indication of the amount of reduction on those entries that relate to summary judgment. Given that plaintiff's counsel has made some attempt to reduce those charges, the Court finds that a further reduction of only 15% is necessary in order to further account for plaintiff's relative success in this case. The Court finds that plaintiff is entitled to reasonable

---

[42]*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998).

expenses in the amount of $1660.02.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Renewed Motion for Attorneys' Fees (Doc. 84) is **granted**. Plaintiff is awarded attorneys' fees in the amount of $25,380.55 and expenses in the amount of $1660.02, for a total award of $27,040.57.

Dated:  December 4, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE